United States Court of Appeals,

Fifth Circuit.

No. 91–7085

Summary Calendar.

UNITED STATES OF AMERICA, Plaintiff–Appellee,

v.

ONE AFGHAN URIAL OVIS ORIENTALIS BLANFORDI FULLY MOUNTED SHEEP, Defendant,

Joel Pat Latham, Claimant–Appellant.

June 30, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, EMILIO M. GARZA, and DEMOSS, Circuit Judges.

PER CURIAM:

Claimant Joel Pat Latham appeals from the district court's order denying his motion to reconsider the grant of summary judgment ordering the respondent sheep forfeited to the Government. We affirm.

I. FACTS AND PROCEDURAL HISTORY

The respondent sheep, known as an Afghan Urial *ovis orientalis blanfordi,* was hunted, killed, and skinned ("harvested") by Claimant in the province of Baluchistan, Pakistan, in November of 1987. Claimant removed the respondent sheep's horns and hide from Pakistan to Frankfurt, Germany, with an export permit issued by the province of Baluchistan. Claimant then took the horns and hide from Germany to Spain. At Claimant's direction the horns and hide were then shipped to the United States and delivered to his residence in Arlington, Texas.

Believing that the respondent sheep had been imported illegally into the United States, agents of the United States Fish and Wildlife Service ("USFWS") seized the respondent sheep from a cabinet shop in Arlington pursuant to the Lacey Act, 16 U.S.C. § 3374(a)(1). Claimant was notified of the

seizure, and the USFWS initiated administrative forfeiture proceedings against the respondent sheep. The USFWS and United States Attorney's Office began an investigation into the possibility of bringing charges against Claimant in connection with the importation of the respondent sheep into the United States, but ultimately declined to bring any criminal action. The district court then ordered the respondent sheep arrested, and notice given of the forfeiture proceedings.

Claimant was the only person to file a claim to the respondent sheep. Both Claimant and the Government filed motions for summary judgment, after which the district court entered judgment granting the Government's motion and ordering forfeiture of the respondent sheep to the Government.

Claimant timely served a motion to reconsider the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court denied. Claimant filed a timely notice of appeal.

## II. DISCUSSION

This court reviews the grant of summary judgment *de novo,* using the same criteria used by the district court in the first instance. *Fields v. City of South Houston,* 922 F.2d 1183, 1187 (5th Cir.1991); *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988). The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

This court has not yet had occasion to interpret or apply the forfeiture provisions of the Lacey Act, 16 U.S.C. § 3374(a)(1),[1] which provide for the forfeiture of all wildlife imported or

---

[1]Section 3374(a)(1) provides, in relevant part, as follows:

(1) All fish or wildlife or plants imported, exported, transported, sold, received,

acquired contrary to 16 U.S.C. § 3372(a)(2)(A). Section 3372(a)(2)(A) makes it unlawful for any person to import or acquire any wildlife transported or sold in violation of any foreign law.[2] *See United States v. Lee,* 937 F.2d 1388, 1391 (9th Cir.1991) ("foreign law," for purposes of Lacey Act, includes Taiwanese fishing regulations), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 977, 117 L.Ed.2d 141 (1992); *United States v. 594.464 Pounds of Salmon,* 871 F.2d 824, 826 (9th Cir.1989) (same); *United States v. 2,507 Live Canary Winged Parakeets,* 689 F.Supp. 1106, 1113 (S.D.Fla.1988) (violation of Lacey Act where birds exported in violation of Peruvian "Supreme Decree"). The legislative history establishes that the forfeiture statute provides for strict liability, thereby eliminating any "innocent owner" defense to forfeiture of wildlife imported or acquired in violation of any foreign law. *2,507 Live Canary Winged Parakeets,* 689 F.Supp. at 1117 (quoting Senate Rep. No. 123, 97th Cong., 1st Sess. 13 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1748, 1760).

The Government bears the initial burden of establishing probable cause for the forfeiture. 16 U.S.C. § 3374(b) (incorporating forfeiture provisions of customs laws into 16 U.S.C. §§ 3371–78); *2,507 Live Canary Winged Parakeets,* 689 F.Supp. at 1113; *see also* 19 U.S.C. § 1615. Probable cause is defined as a "reasonable ground for belief ... supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980).

---

acquired, or purchased contrary to the provisions of section 3372 of this title ... shall be subject to forfeiture to the United States notwithstanding any culpability requirements for civil penalty assessment or criminal prosecution included in section 3373 of this title.

[2]Section 3372(a) provides as follows:

It is unlawful for any person

(2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce—

(A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law[.]

Once the Government establishes probable cause, the burden of proof shifts, and any claimant to the property must establish either that a defense to the forfeiture applies or that the property is not subject to forfeiture. *United States v. Little Al,* 712 F.2d 133, 136 (5th Cir.1983). If unrebutted, a showing of such probable cause alone is sufficient to support a forfeiture of the respondent sheep. *Id.* at 136.

Claimant concedes that he took the respondent sheep out of Pakistan, and that he then imported it into the United States. To establish probable cause and therefore be entitled to a judgment as a matter of law under 16 U.S.C. § 3374(a)(1), the Government need only establish that importation of the respondent sheep into the United States violated the laws of Pakistan. 16 U.S.C. § 3374(a)(1); *see United States v. 3,210 Crusted Sides of Caiman Crocodilus Yacare,* 636 F.Supp. 1281, 1285–86 (S.D.Fla.1986) (violation of Bolivian law prohibiting hunting of caimans below a specific size).

Federal courts are competent to make determinations of foreign law. Fed.R.Civ.P. 44.1. Such determinations are considered questions of law on appeal and are subject to *de novo* review. *Id.; Perez & Compania (Cataluna), S.A. v. M/V Mexico I,* 826 F.2d 1449, 1450 (5th Cir.1987).

Claimant contends that he was entitled to bring the respondent sheep into the United States because he possessed an export permit issued by the province of Baluchistan. On its face, the export permit authorized Claimant to take the respondent sheep out of the province of Baluchistan. Claimant argues that because there is no national Pakistani law enacted for the protection of wildlife, no Pakistani law interferes with his right to remove the respondent sheep from Pakistan based upon the provincial permit.

We disagree. According to the Pakistan Constitution, the National Parliament may make laws for the whole country and a province may make laws for the province. Pakistan Const., part V, ch.

1, § 141. The National Parliament has the exclusive authority to legislate in certain fields, including carriage of passengers and goods by sea or by air, and import and export across customs frontiers. *Id.* at § 142(a), referencing Fourth Schedule part I, §§ 24, 27, and 43. The Constitution specifically states that if any provision of any law enacted by a provincial assembly is repugnant to any provision of an act of the National Parliament, then the provincial law shall be void to the extent of the conflict with the national law. *Id.* at § 143.

Pursuant to its powers to regulate imports and exports, the National Assembly of Pakistan promulgated the Imports and Exports Control Act of 1950 (the "Imports and Exports Act"). The Imports and Exports Act establishes the authority for the Ministry of Commerce to issue orders detailing particular goods that may not be exported from Pakistan. According to Export Trade Order, 1987, the export of any goods specified in Schedule I (Essential Commodities) is prohibited. Schedule I specifically prohibits the export of "wild animal skins and garments made from such skins, products or derivatives of such skins." This prohibition leaves little room for doubt that the national government of Pakistan did not intend to allow the export of the remains of the respondent sheep.[3] As to Claimant's provincial permit, the Baluchistan export permit authorizes removal of the respondent sheep from the province; it does not authorize export from the country. Indeed, even if the Baluchistan export permit authorized removal of the respondent sheep from Pakistan, it would be void as repugnant to the Imports and Exports Act. *See* Pakistan Const. part V, ch. 1, § 143.

Moreover, the fact that the Imports and Exports Act was enacted to regulate trade, and not specifically to protect wildlife, is of no moment. The legislative history of the Lacey Act reveals that the foreign law need only "relat[e] or refer[ ] to" wildlife and need not have been enacted for its protection. Senate Rep. No. 123, 97th Cong., 1st Sess. 6 (1981), *reprinted in* 1981 U.S.C.C.A.N.

_____

[3]Pakistan has also acceded to the Convention of International Trade in Endangered Species of Wild Fauna and Flora ("CITES") in 1976 which, in accordance with other Pakistani national laws, prohibits the hunting, trapping, and export of all wild mammals except for those accompanied by authentic CITES permits. Claimant did not possess a CITES permit for the respondent sheep.

1748, 1752. Claimant cites us no requirement that the law violated must have been enacted exclusively for the protection of wildlife.

Next, Claimant argues that despite his lack of a federally issued permit to export the respondent sheep, Pakistan's national government "ratified" his provincial hunting and export permit when its customs officials allowed him to leave the country with the respondent sheep in his personal baggage. There is, however, no provision in the Imports and Exports Act for the "ratification" by customs agents of an otherwise illegal export, and Claimant has pointed to no authority for such ratification.[4]

The Government has established probable cause for the forfeiture, and Claimant has not demonstrated that any genuine issue of material fact exists which would preclude the award of summary judgment and order of forfeiture in the Government's favor.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects, AFFIRMED.

. . . . .

---

[4]Claimant also argues that there is a personal baggage exemption from Export Trade Order, 1987. That order provides, however, that the exemption applies only to goods listed in Schedules II–VI, not goods, such as the respondent sheep, listed in Schedule I.