**DEE–K ENTERPRISES INC.,**
etc., Plaintiffs,

v.

**HEVEAFIL SDN. BHD.,**
et al., Defendants.

**Civil Action No. 97–556–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 23, 1997.

---

Joel Davidow, Sturgis M. Sobin, Joel W. Rogers, Ablondi, Foster, Sobin & Davidow, P.C., Washington, DC, Michael D. Hausfeld, Daniel A. Small, Paul T. Gallagher, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Plaintiffs.

Walter J. Spak, Anne D. Smith, Carolyn B. Lamm, Denise L. Diáz, George L. Paul, Francis A. Vasquez, Jr., White & Case, Washington, DC, for Defendants Heveafil Sdn. Bhd., Filmax Sdn. Bhd., Rubfil Sdn. Bhd., Rubberflex Sdn. Bhd., Filati Lastex Sdn. Bhd., Filati Lastes Elastofibre USA, Inc., Filati Corporation of Rhode Island, Filati Corporation of North Carolina, Rubfil USA, Inc., and P.T. Bakrie Rubber Industry.

David M. Foster, Joseph T. Small, Jr., Christine P. Hsu, Fulbright & Jaworski L.L.P., Washington, DC, for Defendant JPS Elastomerics Corp.

James A. West, James A. West, P.C., Houston, TX, for Defendant Consortium Intern. Corp.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff in this international antitrust case elected to serve Indonesian and Malaysian corporate defendants in their respective countries by a courier service. In both Malaysia and Indonesia, this is not one of the modes of serving process prescribed by law. Thus, a threshold question presented is whether a mode of service of process that is not prescribed by foreign law is "prohibited" by that law within the meaning of Rule 4(f)(2)(C).

### I.

On April 17, 1997, plaintiff Dee–K Enterprises Inc. ("Dee–K") filed a complaint, on behalf of itself and parties similarly situated, seeking to recover damages allegedly caused by defendants' conspiracy to violate § 1 of the Sherman Act, 15 U.S.C. § 1. Dee–K is a Virginia corporation that is an "end-user" of extruded rubber thread.[1] In other words, Dee–K purchases extruded rubber thread for use in products that it manufactures, rather than for resale. Defendants are Malaysian, Indonesian and Thai companies that produce extruded rubber thread, and the companies that resell and distribute this product to "end-users" in the United States. Collectively, defendants supply the majority of extruded rubber thread in the United States.

The complaint alleges a conspiracy among the producers and distributors of extruded rubber thread to fix prices and to restrain

---

1. It appears from the complaint that extruded rubber thread is vulcanized rubber thread obtained by the extrusion of compounds of concentrated natural rubber latex. Extrusion is a process by which rubber is shaped by forcing or drawing the rubber through a die. The resulting rubber thread is sold to manufacturers of elasticized textiles such as hosiery and active wear. Extruded rubber thread is also used in products such as bungee cords and toys.

competition for sales of that product throughout the world, including the United States. Treble damages and an injunction are sought. According to the complaint, the Malaysian producers of rubber thread met in 1992, and agreed (i) to raise rubber thread prices worldwide, (ii) to restrict rivalry for customers, and (iii) to discipline employees who authorized discounted prices or otherwise violated the terms of the anti-competitive conspiracy. Thereafter, in 1994–95, the anti-competitive conspiracy allegedly was extended to include Indonesian and Thai producers of extruded rubber thread and their respective distributors.[2]

Defendants Filmax Sdn. Bhd., Rubfil Sdn. Bhd., Rubberflex Sdn. Bhd., Filati Lastex Sdn. Bhd., ("the Malaysian producers"), and defendant PT. Bakrie Rubber Industry ("BRI"), each received a copy of the summons and complaint via DHL courier service. The Malaysian producers received the summons and complaint at corporate locations in Malaysian. BRI, an Indonesian company, received the summons and complaint in Jakarta, Indonesia. Both the Malaysian producers and BRI now move to dismiss the complaint for insufficiency of service of process, pursuant to Rule 12(b)(5), Fed.R.Civ.P. Thus, the question presented is whether the delivery of the complaint and summons to the Malaysian producers and BRI via DHL courier is sufficient service of process.

## II.

■ It is well-established that personal jurisdiction over a defendant is a pre-requisite to maintaining an action against that defendant. *See Federal Insurance Co. v. Lake Shore, Inc.*, 886 F.2d 654, 657 (4th Cir.1989). And for a federal court to obtain personal jurisdiction over a defendant, the defendant must first be properly served with a summons and complaint, pursuant to Rule 4, Fed.R.Civ.P. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987). Thus, analysis here properly focuses on Rule 4(h), the federal provision for service of process upon corporations and associations.

Rule 4(h)(2) establishes the appropriate forms of service for the commencement of a suit against a foreign corporate defendant in federal court.[3] Specifically, Rule 4(h)(2) provides that where service is effected "in a place not within any judicial .district of the United States", that service must be effected

in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof.

Thus, with the exception of personal service, subsection (h) incorporates subsection (f), the provision of Rule 4 addressing service of process upon individuals in a foreign country.

The parties agree and the record reflects that only one provision of subsection (f) is applicable to the facts of this case, namely, subsection (f)(2)(C)(ii). Subsection (f)(1), which permits service of process "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention," is inapplicable because neither Indonesia nor Malaysia is a party to the Hague Convention or any other applicable treaty or agreement. Subsection (f)(2)(A) is also inapplicable. It permits service of process, in certain circumstances, in "the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction," but service via DHL

---

**2.** By Order dated July 15, 1997, the complaint was dismissed without prejudice for failure to state a claim with the specificity and factual support required by *Estate Const. Co. v. Miller & Smith*, 14 F.3d 213, 220–21 (4th Cir.1994). Specifically, the sparse complaint failed to allege with any specificity or factual support that the distributors of extruded rubber thread participated in the anti-competitive conspiracy. Accordingly, the viability of the causes of action in the complaint could not be properly evaluated in light of controlling Supreme Court precedent. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730–31, 97 S.Ct. 2061, 2066–67, 52 L.Ed.2d 707

(1977)(indirect purchasers do not have standing to bring a civil suit for violation of § 1 of the Sherman Act); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984)(parent corporations and its wholly owned subsidiary cannot conspire for the purposes of § 1 of the Sherman Act). Dee–K was given leave to amend the complaint.

**3.** Rule 4(h)(1) is inapplicable as it addresses service of process on corporations and associations in a judicial district of the United States.

.courier or its equivalent is not prescribed by the laws of either Indonesia or Malaysia for service in an action in the courts of those countries.[4] Subsection (f)(2)(B) permits service of process "as directed by the foreign authority in response to a letter rogatory or letter of request," but no letters rogatory were issued in this case. And, finally, subsection (f)(3) permits service "by other means not prohibited by international agreement as may be directed by the court," a circumstance not present here given that Dee–K did not request or receive judicial direction to serve BRI and the Malaysian producers via DHL courier. Accordingly, the question presented reduces to whether Dee–K's service of process on BRI and the Malaysian producers was consistent with subsection (f)(2)(C)(ii), the only provision of subsection (f) applicable in the facts of this case.

In relevant part, subsection (f) provides that service may be effected, as follows:

\* \* \*

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

\* \* \*

(C) unless prohibited by the law of the foreign country, by

\* \* \*

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party being served.

DHL courier delivery is a form of mail requiring a signed receipt, and this delivery was addressed and dispatched by the Clerk

of this Court. It is also "reasonably calculated to give notice." Indeed, return receipts were received from BRI and each of the Malaysian producers. Dee–K thus contends that its method of service of process was adequate under Rule 4. BRI and the Malaysian producers disagree, contending that service via DHL courier is "prohibited" by the laws of Indonesia and Malaysian and, thus, not an appropriate form of service pursuant to (f)(2)(C)(ii).

A threshold question is presented with respect to the interpretation of Rule 4(f)(C). Both BRI and the Malaysian producers contend that forms of service of process that do not adhere to the forms prescribed by Indonesian or Malaysian law are prohibited by the laws of those countries. Accordingly, these defendants contend that Dee–K's failure to comply with the laws of effective service in Indonesia or Malaysia precludes the availability of subsection (C), which only applies where return receipt mail service is not "prohibited." In response, Dee–K contends that "prohibited", as used in subsection (f)(2)(C)(ii), refers to forms of service that are a violation of Indonesian or Malaysian law. Accordingly, Dee–K contends that the relevant question is whether Indonesian or Malaysian law specifically prohibits service via DHL courier, *i.e.*, makes this form of service a violation of the law.

An interpretation of subsection 4(f)(2)(C) properly begins with the Rule's language, specifically the pivotal term "prohibit." Webster's defines "prohibit" as "to forbid by authority or command: ENJOIN; INTERDICT." *See* Webster's Third International Dictionary, at 1813 (1993). Thus, the plain language of (f)(2)(C)(ii) permits service via

---

4. The determination of forms of service prescribed by the laws of Indonesia and Malaysia, like any determination of foreign law, is "a question of law to be established by any relevant sources, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *See United States v. Mitchell*, 985 F.2d 1275, 1280 (4th Cir.1993); *see also* Rule 44.1, Fed. R.Civ.P. Sources typically consulted for the purpose of determining foreign law include, but are not limited to, expert testimony and affidavits, academic publications, and a court's independent research and analysis. *See Mitchell*, 985 F.2d at 1280. BRI and the Malaysian producers submitted declarations from attorneys in Indone-

sia and Malaysia, respectively, that conclusively establish that DHL courier service or its equivalent is not a method of service prescribed by the law in either of those countries. BRI's opinion of Indonesian counsel establishes, in relevant part, that Indonesian law would require BRI to be served personally by a bailiff of an Indonesian Court. The opinion of counsel offered by the Malaysian producers establishes, in relevant part, that Malaysian law would require the Malaysian producer to be served either (i) by personal service, or (ii) by A.R. registered post. Indeed, Dee–K does not contend that service via DHL is prescribed by Indonesian or Malaysian law.

any form of return receipt mail that is not "forbid[den] by authority or command." A form of service is not "forbidden by authority" merely because it is not a form explicitly "prescribed" by the laws of a foreign country. It follows that the plain language of (f)(2)(c) merely limits the availability of this section to forms of service that do not violate the law of the country where service is attempted.

This interpretation of (f)(2)(C) is supported by a consideration of the other provisions of subsection (f). Significantly, were subsection (f)(2)(C) inapplicable where a form of return receipt mail is simply not prescribed by the laws of a foreign country, this subsection would be superfluous to subsection (f)(2)(A), which allows service in a foreign country in any manner "prescribed" by the law of that country. In other words, if all forms of service not "prescribed" are "prohibited", then the failure to satisfy subsection (f)(2)(A) would preclude the availability of subsection (f)(2)(C) and the latter subsection would have no effect; it would be useless. A construction of "prohibit" that leads to this result should be avoided for it is well-established that courts should be "reluctant to interpret statutory provisions so as to render superfluous other provisions within the same enactment." *See United States v. Ivester*, 75 F.3d 182, 185 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("[A] statute must, if possible, be construed in such fashion that every word has some operative effect.").[5] Subsection (C) is given operative effect by interpreting this subsection to permit certain forms of service not prescribed

by the laws of a foreign country. Specifically, subsection (C) permits service of process by the subset of forms of service that, while not "prescribed" by the laws of a foreign country, are also not prohibited by those laws.

The interpretation of Rule 4(f) adopted here is supported by reference to the Advisory Committee Notes to the 1993 amendments to Rule 4. The pertinent note, discussing subsection (f)(2), states that

[s]ervice by methods that would violate foreign law is not generally authorized. Subparagraphs (A) and (B) prescribe the more appropriate methods for conforming to local practice or using a local authority. Subparagraph (C) prescribes other methods authorized by the former rule.

*See* Rule 4, Fed.R.Civ.P. advisory committee's note. This note reflects the committee's focus on prohibiting forms of service that **violate** foreign law, not merely forms of service not prescribed by that law. The advisory committee further distinguishes subsections (A) and (B), which authorize service that conforms to local practice, from subsection (C), which authorizes service by other, *i.e.*, non-conforming, methods.

In sum, the plain language of subsection (f)(2)(C)(ii), interpreted in light of other provisions in subsection (f) and the advisory committee's note, points persuasively to the conclusion that this section authorizes service in a foreign country by "any form of mail requiring a signed receipt ... addressed and dispatched by the clerk of the court to the party being served," provided this form of service does not expressly violate the law of the country in which service is attempted.[6]

---

5. This principle is no less true where the language considered is a Federal Rule of Civil Procedure, for such rules have the force and effect of federal statutes. *See* 28 U.S.C. § 2072; *see also Oklahoma Radio Assoc. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 942 (10th Cir.1992); Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3012 (1973 & 1994 Supp.); *Rowland v. Patterson*, 852 F.2d 108, 113 (4th Cir.1988)(McMillan, J. dissenting).

6. With respect to their interpretation of Rule 4(f)(2)(C)(ii), Fed.R.Civ.P., BRI and the Malaysian producers rely in part on *Graval v. PT. Bakrie & Bros.*, No. CV–95–4336, slip. op. at 6 n.

4 (C.D. Cal. April 12, 1996). In *Graval*, the court stated

[p]laintiff attempts to distinguish between the fact that service by mail is not permitted under Indonesia law from the fact that it is not explicitly prohibited under Indonesia law. In light of the fact that these rules regarding overseas service of process are meant to minimize offense to foreign law, *see* Fed.R.Civ.P. 4(f), Advisory Committee's Notes, 1993 Amendment, the Court finds this distinction without merit.

*Id.* (emphasis added). To the degree that the interpretation of Rule 4(f) adopted here is differ-

## III.

The analysis next turns to whether, on the record of this case, service via DHL courier **violates** the laws of Indonesia or Malaysia.

### A.

■ BRI has submitted a declaration of Indonesian counsel, as well as correspondence between United States and Indonesian counsel in another matter,[7] to support its contention that service via DHL courier is "prohibited" in Indonesia. The record evidence, however, demonstrates only that service via DHL courier is invalid or ineffective in Indonesia.

K. Santoso, Indonesian counsel consulted for the purposes of this case, states that "[s]ervice by any form of mail, including DHL, with or without a return receipt, is not effective service under Indonesian law." Santoso further states that DHL service in this case "did not conform to requirements for service under Indonesian law" and that this service was "insufficient and invalid under Indonesian law." Similarly, the law firm of Manullang & Wibisana, consulted in the *Graval* case, state that Indonesian law does not permit service of process by mail. Specifically, BRI relies on Manullang & Wibisana's answer to two questions, namely,

5. Does Indonesian law permit service of process by mail?

6. Does any Indonesian law prohibit service of process by mail requiring a signed receipt? I have assumed that the answer here is "No" based upon your June 13, 1995 response to my letter of June 1, 1995.

Manullang & Wibisana answered these questions "5) No. Indonesian law does not permit. 6) See answer 5."

The record evidence demonstrates that service via DHL courier is insufficient to effect service for an action brought in Indonesian courts. But this conclusion only precludes the availability of subsection (f)(2)(A). An ineffective or invalid form of service is not necessarily a prohibited form of service, *i.e.*, a form of service that violates Indonesian law. The only evidence concerning whether Indonesian law prohibits service via DHL courier comes from Manullang & Wibisana. But this evidence, answering "see answer 5" to the question whether service via DHL courier is prohibited, reflects a failure to appreciate the relevant distinction drawn here. In essence, the law firm's answer to the question whether Indonesian law prohibits service via DHL courier was that "Indonesian law does not permit" such service. But, as explained above, explicit permission for a form of return receipt mail service is not required by subsection (2)(C)(ii).

Indeed, the letters of Manullang & Wibisana reflect that certain forms of service that are "not stipulated by the Indonesia law" are accepted as "a matter of practice." Specifically, the law firm stated that it was a "routinely accepted" practice for Indonesian lawyers to serve a summons in Indonesia that was issued by a foreign court. While such personal service would be inadequate for the purposes of Rule 4,[8] the acceptance of this practice demonstrates that some forms of service that are not stipulated or permitted by Indonesian law are, nonetheless, not a violation of the laws of that country. Neither Santoso nor Manullang & Wibisana (i) state that service via DHL courier would violate Indonesian law, or (ii) cite a specific case, statute or rule prohibiting this form of ser-

---

ent from the conclusion reached in *Graval*, that opinion is neither controlling nor persuasive in the facts of this case. *Graval* does not address the fact that its interpretation of Rule 4(f) would render subsection (2)(C) superfluous to subsection (2)(A). Moreover, it is worth noting that the interpretation of Rule 4 adopted here does not offend foreign law. Rule 4(f)(2)(C)(ii) addresses effective service of process for the purposes of causes of action in the courts of this country, and thus does not compel a foreign country to recognize forms of process that its laws do not prescribe.

7. This correspondence consists of letters between Vincent Caracci, plaintiff's counsel in *Graval v. PT. Bakrie & Bros.*, No. CV–95–4336 (C.D.Cal), and the Indonesian law firm of Manullang & Wibisana. These letters concern efforts to effect service of process in Indonesia on several companies affiliated with BRI.

8. Subsection (f)(2)(C)(i), which permits personal service of the summons and the complaint where such service is not prohibited by the law, is not available where the party to be served is a corporation. *See* Rule 4(h)(2), Fed.R.Civ.P.

**382**

vice. Thus, the record reflects that service via DHL courier is not prohibited by Indonesian law.

Accordingly, Dee–K's service of process on BRI was sufficient to satisfy Rule 4(f)(2)(C)(ii), Fed.R.Civ.P., and BRI's motion to dismiss for insufficiency of service of process must be denied.

An appropriate order has entered.

### B.

The Malaysian producers offer the opinion of a Malaysian law firm, Skrine & Co., to support their contention that service of process via DHL courier is prohibited by Malaysian law. The record evidence, however, demonstrates only that service via DHL courier is ineffective in Malaysia.

The letter to counsel for the Malaysian producers from Skrine & Co. states that

a writ originating an action must be served either personally on each defendant or by sending it prepaid A.R. registered post addressed to the defendant's last known address. DHL or courier service is not an effective method of service under Malaysian law on a Malaysian company.

This undisputed opinion demonstrates that service via DHL courier is insufficient to effect service for an action brought against a Malaysian company in Malaysian courts. But this conclusion only precludes the availability of subsection (f)(2)(A). An ineffective form of service is not necessarily a prohibited form of service, i.e., a form of service that violates Malaysian law. Thus, no record evidence demonstrates that service of process via DHL courier is prohibited by Malaysian law.

In contrast, a publication of the United States Department of State specifically states that service of process for an action brought against a Malaysian company in United States courts can be effected by "international registered mail, return receipt requested." *See* International Judicial Assis-

tance, U.S. Dep't of State, Pub. CA/OCS/ACS/EAP 3/97, Malaysia 4 (1997). To be sure, this publication disclaims total accuracy with respect to the opinions relating to legal requirements of foreign countries.[9] Yet, in the absence of record evidence that Malaysian law prohibits service via DHL courier, the Department of State publication establishes that this form of service is sufficient for the purposes of Rule 4(f)(2)(A)(ii), Fed.R.Civ.P.

Accordingly, the Malaysian producers' motion to dismiss for insufficiency of service of process must be denied.

An appropriate order has entered.

---

9. The publication states that

[t]he information in this circular relating to the legal requirements of specific foreign countries is provided for general information only and may not be totally accurate in a particular case. Questions involving interpretation of specific foreign laws should be addressed to foreign counsel.

*See* International Judicial Assistance—Malaysia, at 1.