RESOURCE VENTURES, INC.,
a Maryland corporation,
Plaintiff,

v.

RESOURCES MANAGEMENT INTER-
NATIONAL, INC., a Delaware corpo-
ration, P.T. Resources Jaya Technic
Management Indonesia, an Indonesi-
an P.T. corporation, P.T. Sumber
Daya Kelola, an Indonesian P.T. cor-
poration, Walter J. Frost, an individu-
al, Harvey Goldstein, an individual,
and David Salman, an individual, De-
fendants.

No. Civ.A. 96–491–JJF.

United States District Court,
D. Delaware.

March 23, 1999.

Joseph J. Bodnar, Walsh and Monzack P.A., Wilmington, Delaware, of counsel Daryl J. Bergmann, Business Legal Services, Bloomington, Minnesota, for plaintiff.

Frederick L. Cottrell, III, Claudia A. DelGross, Richards, Layton & Finger, Wilmington, Delaware, of counsel Joseph S. Radovsky, Greene, Radovsky, Maloney & Share, San Francisco, California, for defendants.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is the Defendants' Motion to Dismiss (D.I.32). The Defendants argue that because Defendant Resources Management International, Inc. is a dissolved company, the Plaintiff's claims against it are untimely. (D.I.32). The Defendants also contend: 1) that the Court lacks personal jurisdiction over the other Defendants; 2) that service as to those Defendants was improper; 3) that the Plaintiff's claims are time-barred; and 4) that Plaintiff fails to state a claim upon which relief can be granted. (D.I.33). The Plaintiff has filed an Answering Brief (D.I.41) and the Defendants have filed a Reply (D.I.47). The Plaintiff has also filed a Supplemental Response (D.I.53). For the reasons discussed below, the Defendants' Motion to Dismiss (D.I.32) will be granted in part and denied in part.

## BACKGROUND

Plaintiff Resource Ventures, Inc. ("RVI") is a Maryland company that develops technology related to the recapture and refining of "flare gas" burned off as a waste product during the processing of petroleum. (D.I. 28 at ¶¶ 3 and 10). The Defendant Resources Management International, Inc. ("RMI") is a Delaware company that operates as an oil service contractor and business consulting firm in Southeast Asia. (D.I. 28 at ¶ 4). The Defendant P.T. Resources Jaya Technic Man-

agement Indonesia ("PT–RMI") and Defendant P.T. Sumber Daya Kelola ("SDK") are Indonesian companies affiliated with RMI. (D.I. 28 at ¶¶ 5 and 6). Defendants Walter Frost and Harvey Goldstein, both citizens of the United States, and Defendant David Salman, a citizen of Indonesia, have all served as directors, officers and employees of RMI and PT–RMI. (D.I. 28 at ¶¶ 7, 8 and 9).

In August, 1985, Plaintiff RVI and Defendant RMI entered into an agreement regarding a joint venture involving natural gas recovery and processing in Indonesia. (D.I. 33 at Exh. C). It is certain disagreements that arose between the parties as to the interpretation of that agreement which form the basis of this lawsuit.[1]

## DISCUSSION

### I. Timing of Claim Against RMI

■ RMI contends that the Complaint as it relates to RMI should be dismissed because RMI was dissolved at the time the Plaintiff commenced this action against RMI. (D.I. 33 at 11). Title 8, Section 278 of the Delaware Code permits an action against a dissolved corporation only if it is brought before the expiration of three years from the date of dissolution. Del. Code Ann. tit. 8, § 278 (1997). According to RMI, it dissolved on December 22, 1993, and therefore, the three year period in which it can be sued expires on December 22, 1996. (D.I. 33 at 11). Although the Plaintiff filed the original complaint in this matter on October 11, 1996, RMI contends that the Plaintiff initially sued a Defendant company called Resource Management International, and not RMI. (D.I. 33 at 11). RMI contends that it was not named as a party until March 19, 1997 and not served through the Secretary of State until March 24, 1997, which was after December 22, 1996. (D.I. 33 at 12). RMI contends that the Plaintiff could have easily ascertained the proper identity of RMI, and therefore the Amended Complaint, which adds RMI as a Defendant to this litigation, should not relate back to the date of the Original Complaint. (D.I. 47 at 4–5).

In response, the Plaintiff contends that the designation of Resource Management, Inc. as a Defendant in the Original Complaint was a result of a typographical error, and that such an error should not mandate dismissal of the action against RMI. (D.I. 41 at 14). The Plaintiff contends that the error was inadvertently carried over from RMI's own document, and that the Original Complaint sufficiently identified RMI. (D.I. 41 at 15).

The Court agrees with the Plaintiff that the typographical error which occurred should not result in the dismissal of RMI from this action. The fact that RMI itself made similar typographical errors on documents exchanged with the Plaintiff demonstrates the reasonableness of the Plaintiff's mistake. Additionally, although service on RMI occurred outside of the 120–day period dictated by Federal Rule of Civil Procedure 4(m), the Court concludes that the requirements for relation back to the Original Complaint have been met under Federal Rule of Civil Procedure 15(c).

In order for an amendment that changes the name of the defendant to relate back to the filing date of the Original Complaint, the claim must have arisen out of the same transaction as that set forth in the original complaint, and,

> within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice

---

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different States or subjects of a foreign state and the amount in controversy exceeded the then-applicable amount of $50,-000. The 1996 Amendment to Section 1332, which raised the amount in controversy requirement from $50,000 to $75,000, did not take effect until after the filing of the Complaint. *See* Pub.L. No. 104–317, s. 205(b) (1996) ("The amendment made by this section shall take effect 90 days after the date of enactment of this Act [Oct. 19, 1996].").

of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). Courts have interpreted the notice requirement under Rule 15(c) broadly, to include actual, constructive, or imputed notice, through formal or informal channels. *See e.g., Wine v. EMSA Ltd.,* 167 F.R.D. 34, 37–38 (E.D.Pa.1996); *Kinnally v. Bell of Pennsylvania,* 748 F.Supp. 1136,1141 (E.D.Pa.1990); James Wm. Moore, 3 *Moore's Federal Practice* § 15.19[3][c] (3d ed.1997). RMI concedes that service was made on the remaining Defendants on January 28, 1997, which was within the 120–day period required by Rule 4(m). (D.I. 33 at 12); Fed.R.Civ.P. 4(m). Given the relationships between the Plaintiff and RMI and among the other Defendants, the Court finds it reasonable that RMI had notice of the instant lawsuit, and knew or should have known that the action would have been brought against it in the absence of the typographical error made by the Plaintiff. RMI does not deny it had notice, but only contends that it was not served within the requisite time. Further, the Court finds that RMI has not demonstrated that it will be unduly prejudiced by the late service in maintaining a defense. Therefore, because RMI had notice and is not prejudiced, the Court concludes that Plaintiff's typographical error will not result in the dismissal of the claims against RMI.

## II. Service of Process upon the Indonesian Defendants

■ The Indonesian Defendants, PT–RMI, SDK and David Salman contend that the Complaint as it pertains to them should be dismissed because of the Plaintiff's failure to properly complete service. (D.I. 33 at 28–29). In response, the Plaintiff contends that proper service was effected upon all the Indonesian Defendants pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii). (D.I. 41 at 30–32). Rule 4 governs service upon defendants. Subsection (f) of Rule 4 controls service of process upon individuals in a foreign country and subsection (h) controls service upon corporations and associations.

Subsection (h) states in relevant part:

Unless otherwise provided by federal law, service upon a ... foreign corporation ... and from which a waiver of service has not been obtained and filed, shall be effected ... (2) in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof. Fed.R.Civ.P. 4(h).

Because subsection (h) incorporates subsection (f), the Court will focus on subsection (f). Both the Plaintiff and the Indonesian Defendants agree that only one provision of subsection (f) is applicable to the instant case, namely, subsection (f)(2)(C)(ii). (D.I. 33 at 29; D.I. 41 at 30). Subsection (f)(2)(C)(ii) provides in relevant part:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district of the United States:

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice: ... (C) unless prohibited by the law of the foreign country, by ... (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served. Fed.R.Civ.P. 4(f)(2)(C)(ii).

The Indonesian Defendants contend that service by the clerk of court through international registered mail is an invalid means of service in Indonesia. (D.I. 33 at 29). The Indonesian Defendants contend that service of process in Indonesia can be

validly effected only by an officer of the court, either a bailiff or an attorney appointed specifically for that purpose. (D.I. 33 at 29). The Plaintiff asserts that it properly served the Indonesian Defendants pursuant to Rule 4(f)(2)(C)(ii) and that such service is not prohibited by Indonesian law. (D.I. 41 at 31).

The Court concludes that subsection (f)(2)(C)(ii) limits the forms of service to those that do not violate the law of the country where service is attempted. *See Dee–K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 174 F.R.D. 376, 380 (E.D.Va.1997). This interpretation of subsection (f)(2)(C) is supported by the other provisions of subsection (f). For example, subsection (f)(2)(A) allows service to be effected in the manner prescribed by the law of the foreign country. Fed.R.Civ.P. 4(f)(2)(A). If subsection (f)(2)(A) cannot be satisfied, then a plaintiff may effect service under subsections (f)(2)(B) or (f)(2)(C). Fed. R.Civ.P. 4(f)(2)(B) and (C). Thus, if subsection (f)(2)(C) is inapplicable where a form of return receipt mail is not prescribed by the law of a foreign country, then a plaintiff's failure to satisfy subsection (f)(2)(A) would preclude the availability of subsection (f)(2)(C) thereby making the latter subsection useless. In order to give subsection (f)(2)(C) operative effect, the subsection should be interpreted to permit service of process by the alternative forms of service that, while not specifically prescribed by the laws of a foreign country, are also not prohibited by such laws.

In reaching its conclusion, the Court finds the affidavit of Achmad Suhardi Kartohadiprodjo, an Indonesian lawyer, helpful. In his affidavit, Mr. Kartohadiprodjo states that a "bailiff may, in his discretion use registered mail to effect delivery to the domicile or the residence of a defendant." (D.I. 34 at ¶ 8). Based on this statement, the Court is persuaded that service of process via registered mail is not prohibited under Indonesian law.

In this case, the Indonesian Defendants were served via international registered mail, which is a form of mail requiring a signed receipt, dispatched by the Clerk of this Court. (D.I. 41 at 30, 32). Because the Court concludes that this method of service is not prohibited by Indonesian law, the Court concludes that the Plaintiff has properly served the Indonesian Defendants pursuant to Rule 4(f)(2)(C)(ii). Accordingly, the Court concludes that service of process was properly effected upon the Indonesian Defendants.[2]

### III. Personal Jurisdiction

Defendants PT–RMI, SDK, Walter Frost, Harvey Goldstein and David Salman contend that the Complaint as it relates to them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them. Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise personal jurisdiction over a nonresident "to the extent permissible under the law of the state

**2.** The Court notes that two other courts have considered this issue in the context of Indonesian law, the United States District Court for the Eastern District of Virginia in *Dee–K Enterprises Inc. v. Heveafil Sdn.Bhd.*, 174 F.R.D. 376 (E.D.Va.1997) and the United States District Court for the Central District of California in *Graval v. P.T. Bakrie & Brothers, et al.*, 986 F.Supp. 1326 (C.D.Ca.1996). The *Dee–K Enterprises* court interpreted Rule 4(f)(2)(C)(ii) as authorizing service in a foreign country via any form of mail requiring a signed receipt, dispatched by a clerk of court, so long as the form of service does not expressly violate the law of the country where

service is attempted. 174 F.R.D. at 380. The *Dee–K Enterprises* court held that service via DHL courier is not prohibited by Indonesian law and, thus, Plaintiffs' service of process on Defendants was sufficient to satisfy Rule 4(f)(2)(C)(ii).

On the other hand, the *Graval* court held that Plaintiff's service upon Defendant in Indonesia by registered mail was ineffective because "Indonesian law, as plaintiff's own Indonesian lawyers have advised him, prohibits service by mail, including service by mail with a return receipt requested." 986 F.Supp. at 1329. The Court finds the analysis in *Dee–K Enterprises* more persuasive.

where the district court sits." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir.1990); *Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc.*, 833 F.Supp. 437, 440 (D.Del.1993). In this regard, the Court must first determine whether in personam jurisdiction exists over PT–RMI, SDK, Frost, Goldstein and Salman under Delaware's long arm statute. The Court must then ascertain whether the exercise of such jurisdiction would comport with the Due Process Clause of the United States Constitution under the standards announced in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984).

■ Once a defendant properly raises the jurisdictional defense, the plaintiff has the burden of establishing by a preponderance of the evidence that minimum contacts have occurred. *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). Plaintiff "must sustain its burden of proof ... through sworn affidavits or other competent evidence." *Time Share Vacation Club*, 735 F.2d at 67 n. 9 (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d Cir.1982)).

### A. Delaware Long Arm Statute

Subsection (c) of Delaware's long arm statute gives the Court personal jurisdiction over any nonresident. 10 Del.C. § 3104(c). Under Section 3104, the term "person" includes any natural person, association, partnership or corporation. 10 Del.C. § 3104(a). The statute further provides in relevant part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:(1) Transacts any business or per-

forms any character of work or service in the State; ...

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; .... 10 Del.C. § 3104(c).

### 1. Defendant RMI

■ Because of the relationship between RMI and the other Defendants, the Court must first discuss its jurisdiction over RMI even though RMI has not contested jurisdiction. It is well settled that a party can consent to the personal jurisdiction of a court. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478, 481 (D.Del.1987). Because personal jurisdiction is based on individual liberty interests protected by the due process clause, unlike subject matter jurisdiction, it can be waived by a party's express or implied consent to jurisdiction. *Insurance Corp.*, 456 U.S. at 702–03, 102 S.Ct. 2099; *Chrysler Capital Corp.*, 663 F.Supp. at 481. The use of a forum selection clause is an example of an express consent to personal jurisdiction.

■ In federal courts, "the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). The United States Court of Appeals for the Third Circuit has established a general rule to test the validity of a forum selection clause. Under this general rule, a forum selection clause is presumptively valid and enforceable by the forum unless the objecting party establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would

violate a strong policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *see also Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Continental Bank v. Katz,* 1988 WL 107552, at *1 (E.D.Pa. Oct.14, 1988).

■ The forum selection clause in the instant case appears in the 1985 Agreement between the Plaintiff and Defendant RNH. (D.I. 41 at Exh. A, pg. 6). The clause states "[i]n the event of litigation, the case shall be tried by the appropriate courts in the State of Delaware." (D.I. 41 at Exh. A, pg. 6). The Plaintiff asserts that this clause is enforceable and subjects Defendant RMI to the jurisdiction of this Court. (D.I. 41 at 16). The Defendants concede that this is a forum selection clause but that it does not subject the Defendants to the Court's jurisdiction because the clause contains no reference to jurisdiction. (D.I. 33 at 18).

The Court finds that the forum selection clause cited above is an agreement by Plaintiff RVI and Defendant RMI to consent to jurisdiction of the Delaware courts. Applying the general rule of this Circuit, the Court presumes that the forum selection clause is valid and enforceable. Further, Defendant RMI has not proffered any allegations to establish that the clause was a result of fraud, that enforcement would violate a strong policy in this forum or that litigation in this jurisdiction would be so seriously inconvenient to the parties as to be unreasonable. Since the parties have asserted that the purpose of the clause was to provide a forum in the event of litigation, then the parties must have also intended the clause to be an agree-

ment as to personal jurisdiction so that any lawsuit could be maintained in the Delaware forum. Any other interpretation would render the clause senseless because no litigation could proceed without a court having personal jurisdiction over the parties. · For these reasons, the Court concludes that the forum selection clause in the Agreement between RVI and RMI provides consent to personal jurisdiction in the Delaware courts by the Plaintiff and Defendant RMI.

### 2. Defendant PT–RMI

■ The Defendants argue that the Court lacks personal jurisdiction over Defendant PT–RMI because the forum selection clause in the 1985 Agreement does not bind PT–RMI even though PT–RMI is a signatory to the 1988 Amendment to the 1985 Agreement. (D.I. 33 at 17–18). The Defendants further contend that even if Defendant PT–RMI is bound by the 1985 Agreement, the forum selection clause is not a specific and clear consent to personal jurisdiction. (D.I. 33 at 18). The Plaintiff responds contending that the Court's jurisdiction over Defendant PT–RMI arises from the contractual consent in the 1985 Agreement. (D.I. 41 at 16). The Plaintiff asserts that the 1985 Agreement anticipated PT–RMI's future role and PT–RMI was a signatory to the 1988 Amendment.

The Court agrees that, because PT–RMI was a signatory to the 1988 Amendment modifying the 1985 Agreement, PT–RMI consented to the forum selection clause. The 1988 Amendment specifically states the parties agree that the 1985 Agreement is in "full force and effect," and that the Amendment was to modify and/or clarify the Agreement. (D.I. 41 at Exh. B, pg. 2). Therefore, PT–RMI's contractual obligations are defined in the 1985 Agreement and 1988 Amendment. As such, the Court concludes that Defendant PT–RMI is bound by the forum selection clause in the 1985 Agreement.[3] As previously dis-

---

**3.** Hereinafter the term "Agreement" will refer to the 1985 Agreement and 1988 Amendment unless otherwise specified.

cussed, the forum selection clause is valid and enforceable, and therefore, because Defendant PT–RMI consented to jurisdiction, the Court has personal jurisdiction over it.

### 3. Defendant SDK

 The Defendants contend that the Court lacks personal jurisdiction over Defendant SDK because the Plaintiff has not alleged any acts by SDK which would satisfy the requirements of the Delaware long arm statute or *International Shoe*. (D.I. 33 at 16). The Defendants argue that the Plaintiff's allegation that Defendant SDK is an affiliate or subsidiary under the control and management of RM is insufficient to confer personal jurisdiction over SDK. (D.I. 33 at 16–17). In response, the Plaintiff, relying on *Lawford v. N.Y. Life Insurance Company*, 739 F.Supp. 906 (S.D.N.Y. 1990), maintains that the actions of an affiliate is sufficient to confer jurisdiction on its foreign corporate affiliate. (D.I. 41 at 18).

The Court is persuaded that the Plaintiff's reliance on *Lawford* is misplaced because the Court in *Lawford* based its ruling on New York law rather than Delaware law. *Lawford*, 739 F.Supp. at 916. Applying the requirements of the Delaware long arm statute, the Court concludes that it lacks personal jurisdiction over Defendant SDK. The Amended Complaint does not include any allegations that Defendant SDK transacts any business or performs any type of work or service in Delaware. Further, there are no allegations that Defendant SDK regularly does or solicits business in Delaware or that it engages in persistent conduct in the State or derives substantial revenue from services or things used or consumed in the State. Defendant SDK

was incorporated in and conducts business in Indonesia. The Plaintiff has not proffered any facts to suggest that Defendant SDK regularly does business in the state of Delaware so as to subject SDK to the jurisdiction of this Court. Accordingly, Delaware's long arm statute does not confer personal jurisdiction over Defendant SDK.

### 4. Individual Defendants

 The Defendants also contend that the Court lacks personal jurisdiction over the Individual Defendants David Salman, Walter Frost and Harvey Goldstein because the Plaintiff has failed to allege facts which would satisfy the jurisdictional criteria under the Delaware long arm statute and *International Shoe*. (D.I. 33 at 14). The Defendants contend that the Individual Defendants' remote contacts with Delaware, that of incorporating and dissolving RMI, do not meet the minimum requirements of Section 3104(c) or *International Shoe*. (D.I. 33 at 15). Further, the Defendants contend that because the Individual Defendants may have served in some capacity as a director or officer of a Delaware corporation does not give rise to jurisdiction over them.[4] (D.I. 33 at 15). In response, the Plaintiff contends that as directors of RMI, the Individual Defendants' act of dissolving the corporation by approving the filing of a Certificate of Dissolution in Delaware is sufficiently purposeful to subject them to jurisdiction in Delaware. (D.I. 41 at 21).

 The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over

---

4. The Defendants also contend that the "Directors Consent Statute," 10 Del.C. § 3114, does not confer jurisdiction on the Individual Defendants. (D.I. 33 at 15 n. 14). This statute applies to circumstances where a nonresident director of a Delaware corporation has allegedly breached his fiduciary duty to his corporation and its stockholders. *Istituto Bancario Italiano SpA v. Hunter Engineering Co., Inc.*, 449 A.2d 210, 227–28 (Del.1982). Here, because Plaintiff RVI is not a stockholder of Defendant RMI, the Court concludes that Section 3114 is inapplicable to the instant case.

that individual. *Mobil Oil Corp.*, 833 F.Supp. at 440 (discussing fiduciary shield doctrine). In the past, this Court has concluded that the fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate employee. *Id.* at 443. Accordingly, in interpreting Section 3104(c) to the allowable limits of due process, the Court will consider all forum related contacts of the Individual Defendants, even those taken in their fiduciary capacities.

After reviewing the Amended Complaint, the Court concludes that the Plaintiff has not sufficiently alleged facts to support a finding of personal jurisdiction over the Individual Defendants Salman, Frost and Goldstein. The incorporation and dissolution of RMI are the only contacts which the Individual Defendants had in Delaware. Because the Amended Complaint does not support an allegation that the Individual Defendants incorporated or dissolved RMI in furtherance of a fraudulent scheme, the Court concludes that such contacts are insufficient to give rise to jurisdiction over the Individual Defendants. Besides the acts of incorporation and dissolution, the Plaintiff has not alleged any other contacts the Individual Defendants may have had in Delaware. Therefore, because the jurisdictional requirements under the Delaware long arm statute have not been satisfied, the Court lacks personal jurisdiction over the Individual Defendants Salman, Frost and Goldstein.

### B. Conspiracy Theory of Jurisdiction

 The Plaintiff also contends that the Court has jurisdiction over Defendants PT–RMI, SDK, Salman, Frost and Goldstein under the conspiracy theory of jurisdiction. (D.I. 41 at 19). The Defendants respond by arguing that the Plaintiff has not satisfied the requirements for obtaining jurisdiction under the conspiracy theory. (D.I. 47 at 9–11). Because the Court concludes that it has jurisdiction over Defendants RMI and PT–RMI, it is not nec-

essary for the Court to consider whether it may property exercise personal jurisdiction over them under a conspiracy theory. However, the Court will consider this alternative theory of obtaining personal jurisdiction with regard to Defendants SDK, Salman, Frost and Goldstein.

 Under the conspiracy theory of obtaining personal jurisdiction, a court may in certain circumstances exercise personal jurisdiction over nonresidents based on the forum contacts of their co-conspirators. *Istituto Bancario Italiano v. Hunter Engineering Co.*, 449 A.2d 210, 225 (Del. 1982). In order to establish personal jurisdiction over Defendants SDK, Salman, Frost and Goldstein, the Plaintiff must establish that: (1) a conspiracy to defraud existed; (2) the Defendants were a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware; (4) the Defendants knew or had reason to know of the act in Delaware or that acts outside Delaware would have an effect in Delaware; and (5) the act in, or effect on, Delaware was a direct and foreseeable result of the conduct in furtherance of the conspiracy. *Istituto Bancario*, 449 A.2d at 225.

Applying these requirements to the instant case, the Court concludes that it lacks personal jurisdiction over Defendants SDK, Salman, Frost and Goldstein under a conspiracy theory. The Court finds that the Plaintiff has not provided sufficient factual support to establish that a substantial act or effect in furtherance of a conspiracy occurred in Delaware. The Plaintiff alleges in its Amended Complaint that the Defendants acted to defraud the Plaintiff and conspired with each other to misappropriate and convert the Plaintiff's proprietary information. (D.I. 28 at 11). However, the Plaintiff fails to allege that the Defendants' action in furtherance of the alleged conspiracy to misappropriate and convert the Plaintiff's proprietary information occurred in Delaware or that acts outside of Delaware would have an

effect in Delaware. Because the Court finds that the Plaintiff has not satisfied this element of its conspiracy theory, the Court will not consider whether the Plaintiff has sufficiently satisfied the remaining two elements. Accordingly, the Court concludes no personal jurisdiction exists over Defendants SDK, Salman, Frost and Goldstein based on the conspiracy alleged by the Plaintiff.

### C. Due Process

Normally, even though the Court concludes that jurisdiction over Defendants RMI and PT–RMI exists, the Court must also ensure that the exercise of such jurisdiction comports with federal due process where the defendant has sufficient minimum contacts with the forum, so that exercise of jurisdiction would not "violate traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, the Court need not apply this analysis in the instant case because Defendant RMI consented to jurisdiction under the 1985 Agreement. Likewise, Defendant PT–RMI consented to jurisdiction via the 1988 Amendment to the 1985 Agreement. Therefore, because Defendants RMI and PT–RMI consented to jurisdiction, the Court need not examine the nature and quality of the contacts.

To summarize, the Court will dismiss the claims against Defendants SDK, Salman, Frost and Goldstein for lack of personal jurisdiction pursuant to Rule 12(b)(2).[5]

### IV. Statute of Limitations

The Defendants further argue that all of the Plaintiff's claims are time-barred pursuant to 10 Del.C. § 8106. The Defendants contend that the Plaintiff's claims accrued in April 1993, when the Defendants entered into a contract with Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("PERTAMINA"), and because all of the Plaintiff's claims are subject to the three year limitation under Section 8106, the statute of limitations for the Plaintiff's claims expired in April 1996. (D.I. 33 at 18–20). Therefore, the Defendants argue, because the Plaintiff filed its Complaint in October 1996, the Plaintiff's claims are time-barred pursuant to Section 8106. (D.I. 33 at 18–20).

The Plaintiff responds by arguing that its claims are governed by two statutory sections, Section 8106 and 10 Del.C. § 8108. (D.I. 41 at 22–23). The Plaintiff contends that the causes of action did not accrue until April 1994, when it was informed that the Defendants no longer wished to discuss the Plaintiff's interest in the Joint Venture. (D.I. 41 at 24). Thus, the Plaintiff argues, the statute of limitations did not expire until April 1997, and because the complaint was filed in October 1996, its claims are not time-barred. The Plaintiff further contends that the Defendants are required to account for all profits to the Plaintiff pursuant to the Agreement and that this is a mutual and running account under Section 8108 which precludes the running of the statute of limitations until such account is closed. (D.I. 41 at 27).

In considering the Plaintiff's argument that Section 8108 governs its claims, the Court does not agree that a "mutual and running account" exists in the instant case. Section 8108 states that "[i]n the case of a mutual and running account between parties, the limitation, specified in § 8106 ... shall not begin to run while such account continues open and current." 10 Del.C. § 8108. Delaware courts have interpreted the term "mutual account" to be an account "upon which the items of either side belongs and on which they would reciprocally operate so that any balance between the two may be ascertained." *Weymouth v. Department of Corrections*, 1983 WL 17987, at *6 (Del.Ch. July 18, 1983). Section 8108 does not apply where all the charges in an account are on one

---

**5.** Hereinafter the term "Defendants" will refer to RMI and PT–RMI.

side. *Snavely v. Automobile Insurance Co. of Hartford, Connecticut,* 438 A.2d 1229, 1231 (Del.Super.Ct.1981). Here, the "account" asserted by the Plaintiff is not the type of mutual account referred to in Section 8108. The "account" here concerns the 50% profit agreed to by the parties in the 1985 Agreement. (D.I. 41 at 26–27). This "account" does not operate reciprocally so that a balance may be ascertained because there is only one side to the "account." In this regard, the Court concludes that Section 8108 is not applicable to the instant case.

The Plaintiff and the Defendants do not dispute that Section 8106 is the appropriate limitations period governing the Plaintiff's claims. Rather, the dispute at issue is when the accrual time began, and therefore, when the limitations period expired. Section 8106 states in relevant part that actions based on a promise and to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall expire "3 years from the accruing of the cause of such action." 10 Del.C. § 8106. Under Delaware law, a statute of limitations begins to run when a cause of action arises, even when a plaintiff is ignorant of the facts. *In re ML–Lee Acquisition Fund II, L.P. and ML–Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation,* 848 F.Supp. 527, 554 (D.Del.1994). Accordingly, absent an applicable doctrine to toll the limitations period, the statute of limitations begins to run in a contract action when the contract is breached and in a tort action at the time of the occurrence of the wrongful act. *See Aronow Roofing Co. v. Gilbane Building Co.,* 902 F.2d 1127, 1128 (3d Cir.1990); *Ontario Hydro v. Zallea Systems, Inc. et al.,* 569 F.Supp. 1261, 1268 (D.Del.1983). Further, under Delaware law, discovery delays and disputes are insufficient grounds to toll the statute of limitations. *Seidel v. Lee et al.,* 954 F.Supp. 810, 817 (D.Del.1996) (citing *Mergenthaler v. Asbes-*

*tos Corp. of America,* 500 A.2d 1357, 1361 (Del.Super.Ct.1985)).

The Plaintiff contends that the three year limitations period may be tolled because of the Defendants' alleged fraudulent acts. (D.I. 41 at 22–23). Under Delaware law, the statute of limitations may be properly tolled pursuant to the doctrine of fraudulent concealment. *Studiengesellschaft Kohle, mbH v. Hercules, Inc. et al.,* 748 F.Supp. 247, 252 (D.Del.1990). Fraudulent concealment requires a party to overcome a single threshold question. First, it must be shown that there is sufficient evidence from which a judge or jury can find that facts were fraudulently concealed. Only if that question can be answered in the affirmative, does the issue of when the injured party did discover or should have discovered the injury arise so that the time for the statute of limitations to begin running can be set. *Id.* (citing *Walls v. Abdel–Malik,* 440 A.2d 992, 995–96 (Del.Super.Ct.1982) and *Halpern v. Barran,* 313 A.2d 139 (Del.Ch.1973)).

Fraudulent concealment requires a showing of an affirmative act by the party accused of the wrongful behavior. Only if active concealment is shown will the statute of limitations be tolled. *Id.* Some courts hold that if the person either had "actual knowledge of the wrong done or acted affirmatively in concealing the facts" does a basis for a fraudulent concealment claim exist. *Id.* The majority of Delaware courts hold that an affirmative act is an essential element of fraudulent concealment. *Id.* In addition to actively concealing facts from the complaining party, the actor must have intended to prevent inquiry or knowledge of the injury. *Id.*

In the instant case, the Court finds that the Plaintiff has failed to allege that the Defendants affirmatively concealed their actions thereby preventing the Plaintiff from inquiring about the alleged injuries. By not having alleged any actual fraudulent artifice, the Plaintiff's argument

is that the Defendants' refusal to disclose the assets and proceeds of the Joint Venture so that the Plaintiff is able to ascertain its damages in this suit qualifies as fraudulent concealment. However, failure to disclose the assets and proceeds of the Joint Venture does not constitute fraudulent concealment as to toll the statute of limitations. *S & R Associates, L.P., III v. Shell Oil Co. et al.,* 1998 WL 737990, at *2 (Del.Super.Ct. Sept.30, 1998). Accordingly, the Court concludes that the Defendants' refusal to make an accounting and disclose the nature of their involvement in the Joint Venture does not qualify as an affirmative act constituting fraudulent concealment.

Having concluded that the three year limitation period is not tolled under the doctrine of fraudulent concealment, the Court must now determine when the limitation period accrued and when it expired. As discussed, a general principle under Delaware law is that a "cause of action does not accrue before the right to institute a suit arises." *Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 379 (D.Del.1983).

Even though the Defendants have addressed each claim separately with regard to this issue, the Defendants' principal argument is that the Plaintiff knew or had knowledge of its claims against the Defendants in April 1993, when the Defendants entered into the contract with PERTAMINA. (D.I. 33 at 19–27). Therefore, the Defendants argue, the statute of limitations for the Plaintiff's claims began to accrue in April 1993, and because the Plaintiff filed its Complaint in October 1996, the claims are time-barred. On the other hand, the Plaintiff's contention is that the statute of limitations began to accrue in April 1994, when the Plaintiff received a definitive response from counsel for the Joint Venture that the Defendants refused to discuss the Plaintiff's interest in the Joint Venture. (D.I. 41 at 22–30). Therefore, the Plaintiff maintains that its claims are not time-barred because the

Complaint was filed within the three year limitation period.

After reading the Plaintiff's Amended Complaint, the Court concludes that the claims alleged by the Plaintiff arise from the Defendants' refusal to share in the profits of the Joint Venture with the Plaintiff and to distribute a 50% equity interest in SDK to the Plaintiff. (D.I. 28 at 11). The Agreement between the Plaintiff and the Defendants was not breached when the PERTAMINA contract was entered into because the Plaintiff was aware of the contract and was an anticipated participant to the contract. (D.I. 41 at 27–28; D.I. 28 at ¶ 33). Rather, the Defendants allegedly breached the Agreement when it refused to share the profits of the Joint Venture with the Plaintiff pursuant to the terms of the Agreement and when it refused to allow the Plaintiff to participate in the PERTAMINA contract. The Defendants' refusal became known to the Plaintiff in April 1994 when the Plaintiff's Indonesian counsel informed, via letter, the Plaintiff's U.S. counsel regarding the Defendants' decision. (D.I.41, Exh. F). Accordingly, it was in April 1994 when the statute of limitations for the Plaintiff's causes of action accrued and, therefore, the statute of limitations expired in April 1997. Because the Plaintiff filed the Complaint in October 1996, the Court finds that the Plaintiff's claims are not time-barred under Section 8106.

## V. Failure to State a Claim

Finally, the Defendants contend that Counts II through VIII of the Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw

all reasonable factual inferences in the light most favorable to the non-moving party. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994). The Court, however, is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost,* 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Count II: Tortious Interference

■ In Count II of the Complaint, the Plaintiff alleges that Defendants RMI and PT–RMI "intentionally interfered with the advantageous business relationships, contracts, prospective economic relationships and prospective contracts of" the Plaintiff with RMI, PT–RMI, SDK and PERTAMINA. (D.I. 28 at 14). The Defendants contend that this claim should be dismissed pursuant to Rule 12(b)(6) because a party cannot tortiously interfere with a business relationship or expectancy of its own, and because the Plaintiff has failed to allege that it had a business relationship or expectancy with SDK or PERTAMINA. (D.I. 33 at 30).

■ In order to establish a claim of tortious inference with prospective business relations under Delaware law, the Plaintiff must establish (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted. *CPM Industries, Inc. et al. v. Fayda Chemicals & Minerals, Inc. et al.,* 1997 WL 762650, at \*7 (Del.Ch. Dec.1, 1997); *Dionisi et al. v. DeCampli et al.,* 1995 WL 398536, at \*12 (Del.Ch. June 28, 1995).

In reading the Amended Complaint and drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court concludes that Count II must be dismissed with regard to the Plaintiff's relationship with RMI and PT–RMI because they are parties to the Agreement. The Plaintiff cannot maintain a cause of action against Defendants RMI and PT–RMI for tortious interference with the Agreement of which the Defendants are the contracting parties. *Gilbert and Steiner v. El Paso Co. et al.,* 490 A.2d 1050, 1058 (Del.Ch.1984) (citing *Wilmington Trust Co. v. Clark,* 289 Md. 313, 424 A.2d 744, 754 (1981)). Because the Plaintiff and Defendants RMI and PT–RMI are parties to a contract, the appropriate remedy for the Plaintiff is a breach of contract claim. *See Wilmington Trust Co.,* 424 A.2d at 754.

The Court, however, will deny the Defendants' motion to dismiss Count II with regard to the Plaintiff's prospective relationships with SDK and PERTAMINA. The Court finds that the Amended Complaint contains sufficient allegations to support the Plaintiff's claim that the Defendants tortiously interfered with the Plaintiff's prospective business relationships with SDK and PERTAMINA. The Plaintiff sufficiently alleges that it had prospective business relationships with both SDK and PERTAMINA which Defendants RMI and PT–RMI knew about. (D.I. 28 at ¶¶ 31, 33, 35 and 36). Accordingly, the Court will deny the Defendants' motion to dismiss Count II with regard to the Plaintiff's prospective business relationships with SDK and PERTAMINA.

### B. Count III: Conversion

■ The Plaintiff alleges that the Defendants have "misappropriated or converted" the Plaintiff's property and monies. (D.I. 28 at 15). Specifically, the Plaintiff alleges that the Defendants converted the Plaintiff's "Proprietary Information, proposal, and business opportunities to their own use and profit." (D.I. 28

at 15). The Defendants contend that the property which the Plaintiff refers to is intangible property and under Delaware law, a claim of conversion does not extend to intangible property. (D.I. 33 at 31–32). Therefore, the Defendants argue, the Plaintiff's claim for conversion should be dismissed pursuant to Rule 12(b)(6). The Plaintiff contends that Delaware courts have expanded a conversion claim to encompass intangible property relations which are merged into a document. (D.I. 41 at 34–35). The Plaintiff maintains that because the alleged converted properties are merged into several documents, it has stated a claim for conversion. (D.I. 41 at 35).

▇▇▇ Under Delaware law, conversion [6] is the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it." *Carlton Investments v. TLC Beatrice International Holdings, Inc. et al.,* 1995 WL 694397, at *16 (Del.Ch. Nov.21, 1995). Traditionally, an action for conversion has been applied to the wrongful exercise of dominion over tangible goods. *Id.* Following the modern trend, however, Delaware courts have expanded the doctrine at times to "encompass some intangible goods where the intangible property relations are merged into a document." *Id.*

The Court concludes that the Plaintiff has stated a claim for conversion with regard to its Proprietary Information. The Plaintiff has property interests in the proprietary information, which includes among others plans, technology, designs, and specifications, and has a right to possession of such information. (D.I. 28 at ¶ 10). The Court finds that the Amended Complaint includes sufficient allegations that the Defendants converted the Plaintiff's property by converting the Plaintiff's Proprietary Information to their own use and profit, and by the Defendants' failure to pay monies due to the Plaintiff. (D.I.

28 at ¶ 65). Accordingly, the Court concludes that the Plaintiff has stated a claim of conversion against Defendants RMI and PT–RMI and, therefore, the Court will deny the Defendants' motion to dismiss the claim of conversion.

## C. Count IV: Unjust Enrichment

▇▇▇ In Count IV, the Plaintiff alleges that the Defendants have been unjustly enriched at the expense of the Plaintiff. (D.I. 28 at ¶ 71). Defendants RMI and PT–RMI argue that this claim should be dismissed because the Plaintiff has alleged that a valid contract exists between it and RMI and PT–RMI which is the measure of the Plaintiff's damages in the event of a breach. (D.I. 33 at 33). Therefore, Defendants argue, the Plaintiff's unjust enrichment claim should be dismissed pursuant to Rule 12(b)(6).

▇▇▇ Unjust enrichment is defined as " 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.' " *Fleer Corporation v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del.1988) (quoting 66 Am. Jur.2d, Restitution and Implied Contracts § 3, p. 945 (1973)). Unjust enrichment is a quasi-contract theory of recovery to remedy the absence of a formal contract. *Kirkwood Kin Corp. and John O'Connor v. Dunkin' Donuts, Inc.,* 1997 WL 529587, at *17 (Del.Super.Ct. Jan. 29, 1997). If the "contract is the measure of plaintiff'[s] right, there can be no recovery under an unjust enrichment theory independent of it." *Wood v. Coastal States Gas Corporation et al.,* 401 A.2d 932, 942 (Del.1979).

Here, the Plaintiff alleges that it entered into a valid agreement with Defendants RMI and PT–RMI. (D.I. 28 at ¶¶ 13, 25). Accordingly, the Court finds that the 1985 Agreement and 1988 Amendment govern

---

**6.** By the wording of Plaintiff's allegations in Count III and because the Plaintiff does not argue otherwise, the Court will analyze Count III as a claim for conversion rather than for misappropriation. (D.I. 28 at 15; D.I. 33 at 31 n. 24; D.I. 41 at 34–35).

the relationship of the parties and the obligations involved in this lawsuit. Because a contract exists, the Plaintiff may not pursue an unjust enrichment theory of recovery, and therefore, the Court will dismiss the Plaintiff's unjust enrichment claim.

### D. Count V: Fiduciary Duty

 The Plaintiff also alleges that the Defendants violated its fiduciary duties to the Plaintiff by "depleting and diverting the assets of the Joint Venture." (D.I. 28 at ¶ 75). The Defendants contend that this claim should be dismissed because the Agreement between the Plaintiff and Defendants RMI and PT–RMI only obligated the parties to enter into a joint venture, which would be memorialized in a Definitive Agreement. (D.I. 28 at 34). The Defendants contend that an agreement to enter into a joint venture in the future cannot be construed to establish a joint venture. (D.I. 28 at 34) (citing *N.S.N. International Industries, N.V. et al. v. E.I. DuPont De Nemours and Co.*, 1994 WL 148271, at *8 (Del.Ch. March 31, 1994)). Therefore, the Defendants argue, because the Agreement did not create a joint venture, no fiduciary duties arose and as such the Plaintiff's claim for breach of fiduciary duty should be dismissed pursuant to Rule 12(b)(6).

 If the Plaintiff and the Defendants are joint venturers, then each would "owe the other a fiduciary duty of utmost good faith, fairness and honesty with respect to their relationship to each other and to the enterprise." *In re Arthur Treacher's Fish & Chips of Ft. Lauderdale, Inc.*, 386 A.2d 1162, 1166 (Del.Ch. 1978) (citing *J. Leo Johnson, Inc. v. Carmer*, 156 A.2d 499 (Del.Super.Ct.1959)). A joint venture is "an enterprise undertaken by several parties to carry out a single business purpose for their mutual profit in which they combine their property, skill, knowledge and money." *J. Royal Parker Associates, Inc. v. Parco Brown & Root, Inc.*, 1984 WL 8255, at *4 (Del.Ch. Nov.30,

1984). It is a "partnership limited in its scope and duration." *Satellite Financial Planning Corp. et al. v. First National Bank of Wilmington, et al.*, 633 F.Supp. 386, 401 n. 20 (D.Del.1986) (citing *First Mechanics Bank v. Comm'r. of Internal Revenue*, 91 F.2d 275, 278 (3d Cir.1937)). While joint venturers owe each other and the enterprise a fiduciary duty, such a duty ends with the death of the joint venture. *Dionisi*, 1995 WL 398536, at *9.

In drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has alleged sufficient facts to state a claim for breach of fiduciary duty. In the Amended Complaint, the Plaintiff alleges that it and Defendant RMI entered into a Joint Venture Agreement for the purpose of establishing and implementing "the business of collecting, processing, transporting and utilizing natural gas associated with the production of crude oil in Indonesia with the assistance of PT–RMI." (D.I. 28 at ¶ 13). Defendant PT–RMI later joined the enterprise by way of the 1988 Amendment to the Joint Venture Agreement. (D.I. 28 at ¶ 25). The Plaintiff also alleges that the Agreement provides that the Plaintiff was to have an equal interest in all the profits from the business of the Joint Venture. (D.I. 28 at ¶ 16). Furthermore, the Amended Complaint contains factual allegations that the Plaintiff was to provide the Joint Venture with technical aspects of the business and the Defendants were to provide the Joint Venture with its years of experience in doing this kind of business in Indonesia. (D.I. 28 at ¶ 12). Because the Court finds that the Amended Complaint sufficiently alleges the formation of a joint venture and the existence of a fiduciary relationship, the Court will not dismiss the claim for breach of fiduciary duty.

### E. Count VII and Count VIII: Injunction and Accounting

In Counts VII and VIII, the Plaintiff requests an injunction and accounting respectively. The Defendants contend that

these are merely "requests for particular forms of relief based upon the legal claims set forth" in the rest of the Amended Complaint, and should be dismissed. (D.I. 33 at 35). The Plaintiff asserts that it should not matter that these remedies are separately pleaded. (D.I. 41 at 40).

The Court finds that Counts VII and VIII are requests for relief rather than claims. In fact, the Plaintiff has requested an injunction and accounting in the relief portion of the Amended Complaint. (D.I. 28 at 20–21). Therefore, Counts VII and VIII will not be considered as claims but as part of the Plaintiff's request for relief. As such, the Court will deny the Defendants' motion to dismiss Counts VII and VIII.

### F. Count VI: Fraud and Misrepresentation

In Count VI, the Plaintiff alleges that the Defendants defrauded the Plaintiff by "concealment of the actual assets and proceeds of the business of the Joint Venture" and by the Defendants' "use of such assets and proceeds for their own personal benefit without paying [Plaintiff] RVI." (D.I. 28 at ¶ 81). The Defendants contend that this claim should be dismissed for failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b). (D.I. 33 at 35). The Defendants argue that the Amended Complaint fails to set forth the particular fraudulent acts, which of the Defendants perpetrated the acts and when the alleged fraudulent acts occurred. (D.I. 33 at 36).

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Court of Appeals for the Third Circuit has stated that Rule 9(b) requires "plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp. et al.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). While conclusory allegations that do nothing more than mirror language of statutes and rules are not sufficient under Rule 9(b), the requirement of particularity does not require " 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred.' " *In re ML–Lee*, 848 F.Supp. at 555 (quoting *Temple v. Haft*, 73 F.R.D. 49, 53 (D.Del.1976)). Finally, Rule 9(b) does not require allegations of "date, place or time." *Seville*, 742 F.2d at 791. "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

With these principles in mind, the Court concludes that the Amended Complaint alleges the circumstances of fraud with sufficient particularity to satisfy Rule 9(b). For example, Plaintiff alleges that "Defendants, acting on their own, among themselves or with others, defrauded" Plaintiff by concealing the actual assets and proceeds of the business of the Joint Venture. (D.I. 28 at ¶¶ 42 and 81). The Amended Complaint also includes allegations that Defendants "have misrepresented the assets and proceeds of the business of the Joint Venture" and have made other misrepresentations to Plaintiff, which Plaintiff relied upon. (D.I. 28 at ¶ 83). Regardless of whether Plaintiff will be successful in proving fraud, it has alleged the claim with sufficient particularity to withstand a motion to dismiss under Rule 9(b). Therefore, the Court will deny Defendants' motion to dismiss Count VI of the Complaint.

### CONCLUSION

For the reasons discussed, the Court will dismiss the claims against Defendants

442

SDK, David Salman, Walter Frost and Harvey Goldstein for lack of personal jurisdiction. The Court will dismiss the tortious interference claim with regard to the Plaintiff's allegations that the Defendants tortiously interfered with the Plaintiff's relationships with RMI and PT-RMI, and deny the Defendants' motion to dismiss the tortious interference claim with regard to the Plaintiff's allegations that the Defendants tortiously interfered with the Plaintiff's prospective relationships with SDK and PERTAMINA. Further, the Court will deny the Defendants' motion to dismiss the claims for conversion, breach of fiduciary duty and fraud and misrepresentation. The Court will grant the Defendants' motion to dismiss the unjust enrichment claim, and will consider the injunction and accounting claims as part of the Plaintiff's request for relief.

An appropriate Order will be entered.

### ORDER

At Wilmington this 23 day, of March 1999, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (D.I.32) is GRANTED in part and DENIED in part as follows:

1. The Motion to Dismiss as it pertains to Defendants Resources Management International, Inc. and P.T. Resources Jaya Technic Management Indonesia is DENIED.

2. The Motion to Dismiss as it pertains to Defendants P.T. Sumber Daya Kelola, David Salman, Walter Frost and Harvey Goldstein is GRANTED.

3. The Motion to Dismiss as it pertains to the Plaintiff's tortious interference claim with regard to the Plaintiff's relationships with Resources Management International, Inc. and P.T. Resources Jaya Technic Management Indonesia is GRANTED.

4. The Motion to Dismiss as it pertains to the Plaintiff's tortious interference claim with regard to the Plaintiff's relationships with P.T. Sumber Daya Kelola and PERTAMINA is DENIED.

5. The Motion to Dismiss as it pertains to the Plaintiff's claims for conversion, breach of fiduciary duty, and fraud and misrepresentation is DENIED.

6. The Motion to Dismiss as it pertains to the Plaintiff's unjust enrichment claim is GRANTED.

7. The Plaintiff's claims for injunction and accounting will be considered as the Plaintiff's request for relief.